# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

KAMALUDDIN NABIZADA,            )

      Prospekt Mira               )      Case No: _____

      Moscow, Russia            )

                            )

         Plaintiff,            )

                            )      **COMPLAINT FOR**

      -against-             )      **DECLARATORY AND**

                            )      **INJUNCTIVE RELIEF**

ANTONY J. BLINKEN,           )

      in his official capacity as     )

      Secretary of the United States )

      Department of State        )

      2201 C St., NW           )

      Washington, D.C. 20520    )

                            )

THE UNITED STATES          )

DEPARTMENT OF STATE,     )

      2201 C St. NW           )

      Washington, D.C. 20520    )

                            )

JANET YELLEN,              )

      in her official capacity as    )

      Secretary of the United States )

      Department of the Treasury   )

      1500 Pennsylvania Ave., NW )

      Washington, D.C. 20220    )

                            )

THE UNITED STATES DEPARTMENT )

OF THE TREASURY,         )

      1500 Pennsylvania Ave., NW )

      Washington, D.C. 20220    )

                            )

BRADLEY SMITH,           )

      in his official capacity as Director )

      of the United States Department of )

      the Treasury, Office of Foreign )

      Assets Control            )

      1500 Pennsylvania Ave, NW-Annex )

      Washington, D.C. 20220    )

                            )

      and                   )

                            )

THE UNITED STATES DEPARTMENT    )
OF THE TREASURY, OFFICE OF    )
FOREIGN ASSETS CONTROL,    )
    1500 Pennsylvania Ave, NW-Annex )
    Washington, D.C. 20220    )
                               )
            Defendants.    )
_____)

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Kamaluddin Nabizada (herein referred to as "Plaintiff" or "Mr. Nabizada") brings this Complaint for Declaratory and Injunctive Relief against Defendants the United States Department of State (the "State Department"), its Secretary, Antony J. Blinken, the United States Department of the Treasury, its Secretary, Janet Yellen, the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"), and its Director, Bradley Smith (collectively, the "Defendants") and in support of his complaint alleges:

### INTRODUCTION

1.    This lawsuit arises from the Defendants' unjustified and unlawful designation of Plaintiff as a Specially Designated National ("SDN") on May 25, 2022, and Defendants' continued failure to adjudicate Plaintiff's delisting petition submitted in October 2022 seeking to remove him from the List of Specially Designated Nationals and Blocked Persons (the "SDN List").

2.    Plaintiff asserts that Defendants have exceeded the powers delegated to the President and the Executive Branch by Congress and impermissibly authorized the designation of Plaintiff based on facts that are materially incorrect, including alleged association with an entity with whom Plaintiff served all relations well before the occurrence of alleged activities that appear to be the basis of his designation, and whose designation does nothing to deal with an ongoing national security crisis or objective.  The Defendants are acting arbitrarily and capriciously by unreasonably delaying adjudication of Plaintiff's delisting petition.  Furthermore, there is no

2

factual basis upon which Defendants could reasonably determine that Plaintiff should remain on the SDN List.

3.     Plaintiff, a citizen of Afghanistan currently residing in the Russian Federation, was placed on the SDN List on May 25, 2022, apparently because he was, at one time in the past, the owner of a company that, subsequent to Plaintiff's sale of the company, was alleged by Defendants to have been involved in the smuggling of Iranian oil and providing support to the Iranian government and Iran's Islamic Revolutionary Guard Corps starting in April 2021.  Mr. Nabizada divested his ownership in the company in question, RPP Limited Liability Company ("RPP"), on December 11, 2019, and had severed all ties and relationships with RPP by August 14, 2020.  The U.S. Department of the Treasury's Office of Foreign Assets Control Press Release dated May 22, 2022 (the "OFAC Press Release") announcing Plaintiff's inclusion on the SDN List alleges RPP involvement in Iranian oil smuggling in violation of U.S. sanctions "[a]s early as April 2021"—more than seven months after Plaintiff had severed all ties with RPP. A true and correct copy of the OFAC Press Release is attached hereto as **Exhibit A**.  The OFAC Press Release contains nothing beyond conclusory statements as to Plaintiff and scant information even as to what actions RPP is alleged to have engaged in that would violate U.S. sanctions.  Based on the OFAC Press Release, there is simply insufficient evidence of any violation of U.S. sanctions.  Even assuming *arguendo* that RPP engaged in activity that violated U.S. sanctions, the stated timeframe of the alleged activities of RPP that were the basis of Plaintiff's designation, as described in the OFAC Press Release, occurred after Plaintiff was no longer associated with RPP in any fashion.  This directly undermines the basis asserted by Defendants for designating Plaintiff as an SDN.

4.     Nevertheless, despite having had no association whatsoever with RPP for over seven months prior to any conduct by RPP alleged to have violated U.S. sanctions, Defendants

designated Plaintiff as an SDN on the basis of such association. In so doing, the Defendants failed to describe what actions RPP or Plaintiff took in violation of U.S. sanctions with any particularity. To make matters worse, Defendants have failed and refused to take action to remove Plaintiff from the SDN List despite being officially notified of these facts nearly one year ago, on October 20, 2022, upon Plaintiff's formal submission of a petition for removal from the SDN List and release of his blocked property (the "Delisting Petition").

5.      Defendants' designation of Plaintiff as an SDN violated the statutory and constitutional limits on the Executive Branch's power because it has had and will have no impact on U.S. national security or foreign policy objectives. Mr. Nabizada has had no past or present ties to the Iranian government or ability to influence its policies or actions with respect to any matter. His designation serves no legitimate U.S. national security purpose. On the contrary, Plaintiff's improper designation undermines Defendants' stated objective of imposing economic sanctions and placing individuals and entities on the SDN list for the purposes of promoting U.S. national security interests and foreign policy goals by preventing and deterring conduct deemed detrimental to such interests and goals because neither he nor any company over which he exercised any control is or ever was engaged in any actions harmful to such interests and goals.

6.      Furthermore, Plaintiff's SDN designation has had the effect of shutting down his charitable activities in Afghanistan in support of those Afghan citizens suffering under the harsh and brutal rule of the Taliban – an outcome antithetical to U.S. values and national security objectives. OFAC's own stated policy with respect to sanctions and designation on the SDN List is "not to punish, but to bring about a positive change in behavior." See OFAC website at https://ofac.treasury.gov/specially-designated-nationals-list-sdn-list/filing-a-petition-for-removal-from-an-ofac-list. Where, as here, Plaintiff has engaged in no conduct in violation of U.S.

sanctions, there is no "positive change in behavior" needed. *Id.*  Moreover, failing to remove individuals from the SDN List where the purported justification for their designation rests on flawed, incorrect, or outright false information signals to the foreign actors that Defendants seek to influence that such designations are arbitrary and not in keeping with the rule of law, due process or equal protection.

7.     Given that the basis for Plaintiff's designation alleged in the OFAC Press Release is the leveraging of RPP by a former Iranian Islamic Revolutionary Guard Corps-Qods Force officer, an individual completely unknown to Plaintiff, to transfer money "on behalf of the IRGC-QF from Russia," during a time period when Plaintiff had no association whatsoever with RPP, Plaintiff has clearly not engaged in the alleged activities in violation of U.S. sanctions and there is effectively nothing Plaintiff could do to "change" his behavior.

8.     As such, Defendants have exceeded the power granted by Congress to them to impose sanctions insofar as the designation of Plaintiff was based on inaccurate and false premises and fails to serve a legitimate U.S. national security interest or foreign policy objective.

9.     Furthermore, Defendants' refusal to grant, or take any action whatsoever, on Plaintiff's Delisting Petition for nearly a year renders him without effective administrative recourse.  Even if Defendants' designation of Plaintiff complied with the powers granted to them by Congress and the U.S. Constitution, such delay in adjudicating Plaintiff's Delisting Petition amounts to a denial of Plaintiff's due process and equal protection rights.  By taking the action of designating Plaintiff, Defendants obligated themselves under the U.S. Constitution to afford Plaintiff due process and equal protection under the law.  Upon his designation, certain legal protections also attached to Defendants' actions under the Administrative Procedure Act ("APA").  Specifically, Defendants may not act arbitrarily and capriciously through the adjudication process

to deprive those affected by their actions of due process and equal protection, including a meaningful opportunity to respond to government action and equal treatment to those similarly situated. In unnecessarily delaying adjudication of his Delisting Petition, Defendants have deprived Plaintiff of his rights to equal protection and due process under the U.S. Constitution and violated the APA.

10.    On April 3, 2023, OFAC sent Plaintiff a request for additional information in response to Plaintiff's October 2022 Delisting Petition (the "OFAC RFI").

11.    Plaintiff fully cooperated with and provided timely responses to the OFAC RFI. More specifically, Plaintiff submitted his response to the OFAC RFI on June 30, 2023.  Now, nearly a year after Plaintiff's initial submission of his Delisting Petition and nearly three months after submission of Plaintiff's response to OFAC RFI, Defendants have failed to act despite Plaintiff's provision of conclusive documentary evidence of his lack of affiliation with RPP during the time in question.

12.    In fact, to date, OFAC has not even provided any substantive response to the Delisting Petition or Plaintiff's response to the OFAC RFI in June 2023 requesting urgent adjudication of his petition.

13.    Despite Plaintiff's request in his Delisting Petition that OFAC provide him with copies of the non-classified portions of the record supporting his designation as an SDN on an expedited basis, Defendants have failed to do so and failed to provide any response to this request.

14.    Instead, the OFAC RFI asked Plaintiff for information that is both irrelevant and unnecessary in a transparent attempt to either delay making any decision on his petition or to fish for information that may warrant designation on other grounds.

15.     The Defendants' utter lack of response and extensive delay in adjudicating Plaintiff's Delisting Petition is plainly arbitrary and capricious when one considers that the original petition included copies of two separate Certificates of Entry in the Unified State Register of Legal Entities of the Federal Tax Service of Russia, fully certified by the Ministry of Justice of Russia, along with certified English translations confirming Plaintiff's disassociation with RPP prior to April 2021 when Defendants allege RPP was leveraged to violate U.S. sanctions.  The first certificate confirmed the transfer of 100% of ownership of RPP from Plaintiff to an Afghan businessman named Mikhrab Sukhrab Khamidi, also known as Mehrab Suhrab Hamidi ("Mr. Hamidi") on December 11, 2019.  The second certificate confirmed the termination of Plaintiff's relationship with RPP on August 13, 2020.  Since August 14, 2020, Plaintiff has had no involvement, relationship, or business dealings whatsoever with RPP or Hamidi.  True and correct copies of the two Certificates of Entry are attached hereto as **Exhibit B** and **Exhibit C** respectively.

16.     In fact, Defendants were apparently aware of Plaintiff's lack of affiliation with RPP during the time of alleged activities that appear to be the basis of his designation but elected to designate him as a SDN regardless of this knowledge.  In describing RPP, The OFAC Press Release states RPP was "formerly managed by Afghan businessman Kamaluddin Gulam Nabizada" while discussing actions alleged to have occurred "[a]s early as April 2021" which is more than seven months after Plaintiff severed all relations with RPP and about sixteen months after he transferred full ownership of RPP to Hamidi. *See* Exhibit A. Nevertheless, Defendants designated Plaintiff as an SDN and have refused by inaction to remove him from the SDN List.

17.     Defendants' inaction on the Delisting Petition is equal to its denial.  The decision to place an individual on the SDN List is not subject to any independent judicial review and results in the immediate blocking of the individual's property and interests in property in the United States

or in the possession or control of U.S. persons, bans U.S. persons from engaging in any transactions with the individual without an OFAC-issued license, and often results in a *de facto* ban on participating in the international banking system. The individual's only recourse is to petition for removal from the same branch of government who made the decision to make the designation in the first place. For that reason, it is critical, and more importantly legally required, that Defendants provide Plaintiff due process and grant him equal protection under the laws of the United States under which they seek to deprive him of his property.

18.     Defendants' designation of Plaintiff has caused significant harm – in both humanitarian aid to needy Afghans previously served by Plaintiff's charity and in real financial terms in connection with Plaintiff's legitimate business activities. As a result of Defendants arbitrary and capricious actions, foreign financial institutions have closed Plaintiff's personal and charitable accounts resulting in the winding down of the Nabizada Foundation, an Afghanistan-based charitable foundation focused on helping the needy and vulnerable people in various regions of Afghanistan, building schools, supporting education, and engaging in other charitable activities. Similarly, Defendants actions have also caused foreign financial institutions to close Plaintiff's business accounts wholly unrelated to the allegations against RPP. As a result, Plaintiff's legitimate food import and export business as well as Plaintiff's media company in Afghanistan, Arezo TV and Radio Networks, which focuses on promoting freedom of speech, human rights, democracy, secularism, the cultural values of Afghans and Afghan music, are now virtually bankrupt and barely operational. Prior to Defendants' designation of Plaintiff, Arezo TV and Radio was among the leading television and radio networks in Afghanistan and was widely popular, especially in the northern parts of Afghanistan, and even had a contractual arrangement with the British Broadcasting Corporation ("BBC") pursuant to which Arezo TV networks

broadcast BBC news bulletins live in Afghanistan.  All of Arezo TV's sponsorship contracts are now terminated as a result of Defendants' unjustified designation of Plaintiff as an SDN.

19.    Plaintiff has also suffered significant reputational harm as direct result of Defendants' actions.  For example, as a direct result of Defendants' designation of Plaintiff as an SDN in an arbitrary and capricious manner, banks in Europe, the Middle East, Central Asia and Afghanistan, with some of which Plaintiff had decades long relationship, have closed Plaintiff's personal and business accounts despite the fact that Plaintiff is not subject to sanctions in any other foreign jurisdiction.

20.    In addition, Plaintiff's unlawful designation has caused substantial harm to Plaintiff's family members, many of whom are U.S. persons, including U.S. citizens.  For example, Plaintiff's wife and children are regularly detained at the U.S. border and subjected to harsh and inappropriate questioning for hours along with the unwarranted confiscation of their mobile phones—a significant intrusion of any U.S. person's privacy.  Moreover, U.S. government agents regularly call Plaintiff's family members in the United States and armed government agents have made unscheduled visits at odd hours to the homes of family members of the Plaintiff in the United States in an apparent effort to intimidate, harass and inflict trauma.  These acts have caused substantial financial, reputation and emotional harm to members of Plaintiff's family both inside and outside of the United States and continue to this day.

21.    Plaintiff and his family members will continue to suffer these harms so long as Defendants unreasonably delay in adjudicating his Delisting Petition and his SDN designation continues.  Accordingly, Plaintiff brings this action for declaratory and injunctive relief to right this wrong and ensure Defendants comply with the U.S. Constitution, act within the parameters of

the powers delegated to them by Congress, and provide due process and equal protection to Plaintiff, and comply with the requirements of the APA.

## JURISDICTION AND VENUE

22.     This action arises under the U.S. Constitution, the International Emergency Economic Powers Act, 50 U.S.C. § 1701 et seq., and the Administrative Procedure Act, 5 U.S.C. §§ 555 and 701 et seq.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

23.     This Court may grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and Fed. R. Civ. P. Rule 57.  This Court may grant injunctive relief pursuant to Fed. R. Civ. P. Rule 65.

24.     Venue is proper in the District of Columbia as this is the district in which the events giving rise to the Complaint occurred and in which Defendants reside.  *See* 28 U.S.C. §§ 1391(b) and (e).

## THE PARTIES

25.     Mr. Nabizada is and was at all times relevant herein a citizen of Afghanistan and Russia residing in Moscow, Russia.  Mr. Nabizada currently resides at Prospect Mira, House 48, Moscow, Russia.

26.     Defendant the U.S. Department of State is a cabinet-level governmental department, led by the Secretary of State, that manages the United States' relationships with foreign governments, international organizations, and the people of other countries.  It is located at 2201 C St., NW, Washington, D.C. 20520.

27.     Defendant Antony Blinken is the Secretary of the U.S. Department of State.  Mr. Blinken is sued in his official capacity.

28.    Defendant the U.S. Department of the Treasury is a cabinet-level governmental department, led by the Secretary of the Treasury.  In addition to its core objective of promoting economic prosperity and ensuring the financial security of the United States, it implements and administers economic sanctions against foreign threats to the United States.  It is located at 1500 Pennsylvania Ave., NW, Washington, D.C. 20220.

29.    Defendant Janet Yellen is the Secretary of the Treasury of the United States.  Ms. Yellin is sued in her official capacity.

30.    Defendant OFAC is a federal administrative agency of the U.S. Department of the Treasury and is located at 1500 Pennsylvania Ave., NW-Annex, Washington D.C. 20220. OFAC is lawfully responsible for administering U.S. economic sanctions programs, including by designating persons under E.O. 13224 and promulgating regulations dealings with sanctions under those authorities.  Further, under 31 C.F.R. Part 501.807 it is the sole administrative agency responsible for the reconsideration and delisting process.

31.    Defendant Bradley Smith is the Director of OFAC.  Mr. Smith is sued in his official capacity.

## FACTUAL ALLEGATIONS

### A.  Plaintiff's History and Background

32.    Mr. Nabizada was born in Mazar-e-Sharif, Balkh Province, Afghanistan.  He is a citizen of Afghanistan by birth and obtained Russian citizenship in 2001, after having lived, invested, and worked in Russia for over a decade.

33.    Mr. Nabizada began his business career in 1983 working for his family business that imported and exported food products to and from Afghanistan, which has continued as a family business for three generations.  He subsequently started his own business focused on

importing food products, including wheat flour, edible oil, chocolates, and biscuits from the then Soviet Union into Afghanistan.

**B. Kamal Nabizada LTD**

34. In 1993, Mr. Nabizada established Kamal Nabizada LTD, a company focused on importing and exporting goods and products, including food products, to and from Afghanistan that is primarily owned and controlled by himself with minority interests held by his siblings.

35. Mr. Nabizada has been the President and Chief Executive Officer of Kamal Nabizada LTD since its inception, devoting most of his business time to the management and operation of this company.

36. In addition to being among the largest suppliers of food products in Afghanistan, between about 2002 and about 2016, Kamal Nabizada LTD was among the leading suppliers of fuel to Afghanistan, including indirectly supplying fuel to U.S. Military forces in Afghanistan. All of the fuel supplied to Afghanistan came from Commonwealth of Independent States ("CIS"). Even though Kamal Nabizada LTD did not have a direct contract with the U.S. Military, many Afghan and international companies that had fuel supply contracts with the U.S. Military, directly or indirectly, purchased fuel from Kamal Nabizada LTD.

37. In addition to Afghanistan, Kamal Nabizada LTD is registered to do business in Russia and several other CIS countries and has engaged in wholesale trade of food, especially grains, within those countries. Kamal Nabizada LTD purchases its grains primarily from farmers with whom it has long-standing relationships. In turn, Kamal Nabizada LTD sells the grains to food wholesalers in other CIS countries. In addition, Kamal Nabizada LTD is engaged in the business of owning and operating mills that process wheat into flour, and edible oil processing and packaging in CIS countries.

## C.  Arezo TV and Radio

38.    In 2005 and 2006, Mr. Nabizada established Arezo TV and Radio networks that operate out of Mazar-e-Sharif, Afghanistan.  Arezo TV and Radio networks are 100% independent media outlets that are owned, managed, and controlled by Mr. Nabizada.

39.    The Arezo TV and Radio networks focus on promoting freedom of speech, human rights, democracy, secularism, the cultural values of Afghanistan and Afghan music.  Arezo TV and Radio is among the leading television and radio networks in Afghanistan and is widely popular, especially in the northern parts of Afghanistan.

40.    Arezo TV network had a contractual arrangement with the British Broadcasting Corporation ("BBC") pursuant to which Arezo TV networks broadcasted BBC news bulletins live in Afghanistan as well as many other marketing and advertising contracts with businesses in Afghanistan.

41.    All of the contracts that generated revenue for Arezo TV and radio networks were terminated as a result of Defendants' unlawful designation of Mr. Nabizada as an SDN on May 25, 2022.

## D.  Nabizada Foundation

42.    In 2018, Mr. Nabizada established the Nabizada Foundation, an Afghanistan-based charitable foundation focused on helping the needy and vulnerable people in Afghanistan, especially in the northern Mazar-e-Sharif region, through shelter and food distribution, as well as building schools, supporting education, and engaging in other charitable activities.  Mr. Nabizada established the Nabizada Foundation in order to organize his philanthropic and charitable activities through this organization.  He is the sole funder of the Nabizada Foundation and the foundation

has never received any donations, grants, or contributions of any kind from any other external or internal source or person.

**E.  Support for the United States and GIROA in Afghanistan**

43.    Mr. Nabizada has always supported United States policies and programs relating to Afghanistan, supported the Government of the Islamic Republic of Afghanistan ("GIROA") and made efforts to maintain good relations with the United States.  Prior to 2001, Mr. Nabizada supported the Northern Alliance resistance against the Taliban.  Specifically, he lobbied on behalf of the Northern Alliance in Russia and other CIS countries.

44.    Following the overthrow of the Taliban regime by the U.S. and the establishment of GIROA in 2001, Mr. Nabizada continuously supported the GIROA.  In fact, at various stages, Mr. Nabizada's lobbying efforts in Russia were instrumental to gaining Russian support for the policies and programs of GIROA and the United States in Afghanistan.  Among other things, Mr. Nabizada helped GIROA gain the endorsement and support of Russia for United States' peace efforts in Afghanistan as well as security and counterterrorism efforts of the GIROA and the United States in Afghanistan.

45.    The United States Government was aware of Mr. Nabizada's engagement and efforts in Russia to support such policies and programs relating to Afghanistan, and the United States supported such engagement.  In fact, on numerous occasions, United States diplomats and military officers met with Mr. Nabizada and engaged in discussions with Mr. Nabizada relating to Afghanistan and the GIROA and expressed gratitude for Mr. Nabizada's continuing support to the GIROA.

**F. RPP**

46.     To expand his food export and import business beyond Afghanistan and CIS countries, on or about November 12, 2015, Mr. Nabizada registered RPP as a company under the laws of Russia jointly with an Iranian businessman named Sayed Abuzar Khazrai Afzali ("Afzali").

47.     The intent behind the establishment of RPP was to export food products, especially grains, from Russia and Ukraine to Iran and Iraq, both of which were large markets for grains. Mr. Nabizada has been in the business of food trade his entire adult life and he wanted to expand it to other countries in the region. To do so, he needed a partner with experience, financial capability, and contacts in those countries. Afzali, who was a citizen of Iran, claimed to Mr. Nabizada that he had substantial assets as well as good contacts in both Iran and Iraq that would enable the company to succeed. However, soon after registration of RPP, Mr. Nabizada realized that Afzali had materially misrepresented and exaggerated both his financial capability and his contacts.

48.     Accordingly, on January 9, 2017, a little over a year after RPP was first registered, Mr. Nabizada acquired full ownership and control of RPP from Afzali and terminated his relationship with Afzali.

49.     Since that time, Mr. Nabizada has had no contact with Afzali and does not know his whereabouts. During the time that Mr. Nabizada and Mr. Afzali co-owned RPP, RPP had no business activity, no revenue, no assets, and no contracts whatsoever.

50.     Because Mr. Nabizada did not have the time or resources to utilize RPP by himself, on or about December 11, 2019, he transferred the full ownership of RPP to another Afghan businessman named Mikhrab Sukhrab Khamidi, also known as Mehrab Suhrab Hamidi ("Hamidi").

51.     Hamidi was also active in the food trade business in Afghanistan and wanted to start a food import and export business in Russia.  At the time, the capital value of RPP was about $800.00, but Mr. Nabizada transferred his ownership interest in RPP to Hamidi for no consideration and as a gesture of goodwill to a fellow Afghan businessman.

52.     A few months later, Mr. Nabizada removed himself as a statutory Director of RPP on August 13, 2020.  Since August 14, 2020, Mr. Nabizada has had no involvement, relationship, or business dealings with RPP or Hamidi.

53.     During the time that Mr. Nabizada owned RPP and through the date that Mr. Nabizada removed his name from the official register of the companies as the Director of RPP, RPP had no business activity, no revenues, no assets, and no contracts whatsoever.  Moreover, during this period, RPP did not receive any funds from any source whatsoever and did not attempt to raise any funds from any source whatsoever.

**G.  OFAC Designation**

54.     On May 25, 2022, OFAC, in consultation and concert with the other defendants, designated Mr. Nabizada as an SDN pursuant to Executive Order 13224, as amended.

55.     The OFAC Press Release referred to certain alleged activities starting in April 2021 by RPP, that had been *formerly* managed by Mr. Nabizada and went on to designate Mr. Nabizada "for having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of, the IRGC-QF."

**CAUSES OF ACTION**

**COUNT I**

**DEFENDANTS HAVE EXCEEDED THEIR STATUTORY
AND CONSTITUTIONAL AUTHORITY**

56.     Plaintiff realleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

57.     IEEPA limits the President's authority to impose sanctions to actions that "deal with" an ongoing national security crisis. *See* 50 U.S.C. § 1701.  Any action under IEEPA that cannot be shown to deal with the ongoing national security crisis is therefore outside the President's scope of authority under the statute and is unconstitutional.

58.     The APA empowers a reviewing court to set aside agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, or without observance of procedure required by law. 5 U.S.C. § 706(2).

59.     Under the APA, "agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 706(1) and 5 U.S.C. § 551(13).

60.     By designating Plaintiff based on alleged conduct of RPP that the Defendants themselves allege took place after Plaintiff was no longer associated with RPP, Defendants have exceeded their constitutional and statutory authority because such action is based on inaccurate and false premises and does nothing to deal with or affect the underlying national security crisis or objectives.  By engaging in such action, Defendants' designation of Plaintiff is baseless, and it has no nexus to addressing the ongoing national security crisis.

### COUNT II

**DEFENDANTS' FAILURE TO RENDER A DECISION WITH RESPECT TO PLAINTIFF'S DELISTING PETITION CONSTITUTES UNREASONABLE DELAY IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**

61.     Plaintiff realleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

62.     The APA requires agencies to "conclude a matter presented to it...[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time."  5 U.S.C. § 555(b).

63.     Under the APA, reviewing courts are required to compel agency actions unlawfully withheld or unreasonably delayed.  5 U.S.C. § 706(1).

64.     Defendants' failure to render a decision on Plaintiff's delisting petition, despite having indisputable evidence in their possession that Plaintiff did not and does not meet the legal criteria for designation under E.O. 13224 constitutes unreasonable delay under the APA.  Plaintiff will continue to suffer the consequences of his designation so long as Defendants continue to refuse to adjudicate Plaintiff's delisting petition within a reasonable period of time.

## COUNT III

**DEFENDANTS HAVE ACTED ARBITRARILY AND CAPRICIOUSLY IN FAILING TO RENDER A DECISION WITH RESPECT TO PLAINTIFF'S DELISTING PETITION DESPITE CONCLUSIVE EVIDENCE THAT PLAINTIFF DID NOT MEET THE CRITERIA FOR DESIGNATION UNDER E.O. 13224**

65.     Plaintiff realleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

66.     Under the APA, agencies are required "to conclude a matter presented to it...[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time." 5 U.S.C. § 555(b).

67.     Under the APA, "agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). Courts are required to hold unlawful and set aside agency action, findings, and conclusions found

to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. §706(2)(A).

68.     Defendants' failure to act on Plaintiff's delisting petition, despite having evidence in their possession that Plaintiff did not and does not meet the criteria for designation under E.O. 13224, constitutes agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law in violation of the APA.

69.     Specifically, Defendants had or could have reasonably obtained information regarding Plaintiff's transfer of his interest in RPP prior to his designation.  Setting aside that Defendants should have known of Plaintiff's transfer of his interest in RPP, Plaintiff has since presented to Defendants information and documents conclusively demonstrating that he did not meet the criteria for designation under E.O. 13224 at the time of his designation.  Defendants have arbitrarily and capriciously failed to act on that information.

## COUNT IV

**DEFENDANTS' USE OF IRRELEVANT, IMMATERIAL, OR UNDULY REPETITIOUS EVIDENCE TO DESIGNATE PLAINTIFF UNDER E.O. 13224 VIOLATES THE APA**

70.     Plaintiff realleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

71.     Defendants' designation of Plaintiff under E.O. 13224 constitutes final agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Further, the Defendants' designation of Mr. Nabizada was in excess of statutory jurisdiction, authority, or limitations, or short of statutory authorization because the evidence relied upon was irrelevant, immaterial, or unduly repetitious to the criteria of Section 1 of E.O. 13224, in violation of 5 U.S.C. § 556(d).

72.    Specifically, Exhibit A states Mr. Nabizada is "the former Afghan Charge d'Affaires in Moscow." *See* Ex. A, ¶4.

73.    Mr. Nabizada has never held an official diplomatic position of any kind from any country, or in any country.

74.    Exhibit A further states Mr. Nabizada "has previously been linked to a corrupt scheme to defraud the Afghanistan-based Kabul Bank…" *Id*.

75.    Mr. Nabizada has never had any relationship with or involvement in Afghanistan-based Kabul Bank or any related corrupt scheme. Moreover, the alleged Kabul Bank corrupt scheme, with which Mr. Nabizada had no relationship whatsoever, happened around 2010 in Afghanistan and had no ties to any United States sanction program.

76.    The Defendants' allegations against Mr. Nabizada in paragraphs 72 and 74, *supra*, bear no plausible relationship to any U.S. national security interest addressed in E.O. 13224. IEEPA limits the President's authority to impose sanctions to actions that "deal with" an ongoing national security crisis. *See* 50 U.S.C. § 1701.

77.    Defendants' reliance on irrelevant, immaterial, and/or unduly repetitious evidence constitutes a violation of the APA and the designation of Plaintiff should therefore be set aside by this Court.

### COUNT V

### DEFENDANTS' DESIGNATION OF PLAINTIFF UNDER E.O.13224 IS NOT SUPPORTED BY OR IN ACCORDANCE WITH RELIABLE, PROBATIVE, OR SUBSTANTIAL EVIDENCE, AND VIOLATES THE APA

78.    Plaintiff realleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

79.     Defendants' designation of Plaintiff under E.O. 13224 constitutes final agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Further, the Defendants' designation of Mr. Nabizada was in excess of statutory jurisdiction, authority, or limitations, or short of statutory authorization because it was not supported by or in accordance with reliable, probative, or substantial evidence in violation of 5 U.S.C. § 556(d).

80.     Defendants' actions, findings and conclusions based on that evidence therefore violate the APA and the designation of Plaintiff should therefore be set aside by this Court.

## COUNT VI

## DEFENDANTS' DESIGNATION OF PLAINTIFF WAS ARBITRARY, CAPRICIOUS, AN ABUSE OF DISCRETION, AND NOT OTHERWISE IN ACCORDANCE WITH LAW, AND VIOLATES THE APA

81.     Plaintiff realleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

82.     Defendants' designation of Mr. Nabizada under E.O. 13224 was final agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

83.     Defendants' actions therefore constitute a violation of the APA and should be set aside by this Court.

## RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that this Court:

A.     Set aside Defendants' actions as unlawful and declare and/or order Defendants' rescission of Plaintiff's designation under E.O. 13224 and removal of his name from OFAC's SDN List;

B.     Order Defendants to issue a written decision on Plaintiff's pending delisting petition and/or provide a legitimate reason why his petition has not been adjudicated;

C.     Grant an award to Plaintiff of costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 et seq., and any other applicable provision of law; and

D.     Such other and further relief that is just and proper.

Dated: September 29, 2023

Respectfully submitted,

/s/ Enayat Qasimi
Enayat Qasimi
Whiteford, Taylor & Preston LLP
1800 M Street, NW, Suite 450N
Washington, D.C. 20036
Telephone: (202) 659-6792
Email: eqasimi@whitefordlaw.com
D.C. Bar No. 987877

*Counsel for Plaintiff*