**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KAMALUDDIN NABIZADA,<br><br>*Plaintiff*,<br><br>v.<br><br>MARCO RUBIO, *in his official capacity as Secretary of the United States Department of State*, *et al.*,[1]<br><br>*Defendants*. | Civil Action No. 23-02906 (AHA) |

**Memorandum Opinion**

Kamaluddin Nabizada sues the Secretary of State and other federal officials and agencies, asserting they violated the Administrative Procedure Act by adding him to the Specially Designated Nationals and Blocked Persons List, which froze his U.S. assets, and by denying his petition to be removed from the list. The parties each move for summary judgment. The court grants the government's motion and denies Nabizada's motion.

## I. Background

The International Emergency Economic Powers Act ("IEEPA") authorizes the President to take certain actions upon declaring a national emergency, including imposing economic sanctions "to address significant foreign threats . . . to American national security, foreign policy, or the economy." *Learning Res., Inc. v. Trump*, 607 U.S. 229, 237 (2026); *see* 50 U.S.C. §§ 1701, 1702(a)(1)(B). In 2001, relying on IEEPA and other authorities, President Bush issued an executive order declaring a national emergency to respond to the threat of terrorist attacks and

---

1 Secretary of State Marco Rubio is "automatically substituted" as the defendant. *See* Fed. R. Civ. P. 25(d).

authorizing economic sanctions against people or groups identified in the order or who were in the future determined by the Secretary of the Treasury, in consultation with the Secretary of State and the Attorney General, to support terrorism as defined in the order. *Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten To Commit, or Support Terrorism*, Exec. Order No. 13224, § 1(a)–(b) & app., 66 Fed. Reg. 49079, 49079, 49082 (Sep. 23, 2001). In 2019, President Trump amended the executive order to authorize the imposition of economic sanctions against people determined "to have materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of" people or entities that are already subject to sanctions under the order. *Modernizing Sanctions To Combat Terrorism*, Exec. Order No. 13886, § 1, 84 Fed. Reg. 48041, 48042 (Sep. 9, 2019).

The Treasury Secretary has delegated the authority to determine who should be subject to sanctions under this and similar executive orders to the Director of the Office of Foreign Assets Control ("OFAC"). 31 C.F.R. § 594.802. And OFAC has issued regulations to implement the sanctions regime authorized by the order. *See Global Terrorism Sanctions Regulations*, 68 Fed. Reg. 34196, 34196–205 (June 6, 2003) (promulgating 50 federal regulations "to carry out the purposes of" President Bush's executive order). Among other things, these regulations provide that, when OFAC determines a person qualifies for sanctions under the executive order, it designates them as a "specially designated global terrorist." 31 C.F.R. § 594.310; *see also id.* § 594.201(a). OFAC maintains a list of such people called the "Specially Designated Nationals and Blocked Persons List ('SDN List')." *Id.* ch. V, app. A; *see also id.* § 501.807.

In May 2022, acting under these regulations, OFAC designated Nabizada for economic sanctions for materially supporting the Islamic Revolutionary Guard Corps-Qods Force ("IRGC-QF"), an organization already designated for sanctions for providing support to multiple terrorist

groups. ECF No. 40-1 at 3–4, 8–9; *see Notice of OFAC Sanctions Actions*, 87 Fed. Reg. 33305, 33308 (June 1, 2022). OFAC therefore added Nabizada to the SDN List and blocked his property interests in the United States. *See* ECF No. 40-1 at 7; *Zevallos v. Obama*, 793 F.3d 106, 110 (D.C. Cir. 2015) (explaining that someone added to the SDN List has "all their assets in the United States or under the control of any person who is in the United States . . . blocked, or effectively frozen" (cleaned up)). In an evidentiary memorandum accompanying its decision, OFAC stated Nabizada "has materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of, the IRGC-QF." *See* ECF 40-1 at 8–9. That memorandum contains classified materials and some unclassified information about Nabizada based on public reporting. *See id.* at 8–17. The Treasury Department also issued a press release announcing that it had designated Nabizada and others. *Id.* at 3–4. In addition to providing details about Nabizada based on the public reporting referenced in the evidentiary memorandum, the press release stated Nabizada assisted an IRGC-QF associate in arranging "the sale and transport of tens of thousands of tons of oil on behalf of senior IRGC-QF officials." *Id.* at 4.

In October 2022, Nabizada petitioned OFAC to reconsider its decision to designate him and remove him from the SDN List. ECF No. 40-1 at 53–54; *see* 31 C.F.R. § 501.807 (allowing a designated person to "submit arguments or evidence that the person believes establishes that insufficient basis exists for the sanction or that the circumstances resulting in the sanction no longer apply" and "propose remedial steps . . . which the person believes would negate the basis for the sanction"). Without access to the classified information OFAC relied on to designate him, Nabizada's petition challenged statements in the public press release and argued there was no basis for his designation. *See* ECF No. 40-2 at 14–28. And while that reconsideration petition was pending, Nabizada filed this suit. *See* ECF No. 1 ¶ 12.

In March 2024, OFAC denied Nabizada's petition. *See* ECF No. 16 ¶ 66; ECF No. 17 ¶ 77. The denial letter said that after "reviewing and carefully considering the evidence and other information available to OFAC, as well as the information and arguments provided by [Nabizada], OFAC has determined that [he] continues to meet the criteria for designation" and that Nabizada "has not provided credible arguments or evidence establishing that an insufficient basis exists for his designation or that the circumstances resulting in his designation no longer apply." ECF No. 40-1 at 49. The letter further said OFAC "determined that [Nabizada] helped raise funds for the IRGC-QF through the sale and transport of tens of thousands of tons of oil on behalf of senior IRGC-QF officials" and "has been involved in price negotiation, contract execution, and the subsequent sale and shipment of Iranian oil, as well as the repatriation of millions of dollars to the IRGC." *Id.* OFAC also provided a partially redacted, unclassified evidentiary memorandum addressing and rejecting Nabizada's arguments, concluding he "still meets the original criteria for designation" because the information available to OFAC showed he had materially assisted, sponsored, or supported the IRGC-QF through oil-related business dealings with IRGC-QF associates, and thus recommending denying Nabizada's petition. *Id.* at 60; *see id.* at 51–62; ECF No. 40-2 at 1–4.

After OFAC denied his reconsideration petition, Nabizada filed an amended complaint, challenging both his initial designation and the denial of his reconsideration petition under the Administrative Procedure Act. ECF No. 16 ¶¶ 1, 20. Nabizada asks the court to set aside these actions, order the government to remove his name from the SDN List, and award him costs and fees. *Id.* at 22. The government now moves for summary judgment on all of Nabizada's claims. *See* ECF No. 30. Nabizada cross-moves, arguing he is entitled to summary judgment that the government acted arbitrarily and capriciously in designating him and denying his reconsideration

petition and violated his due process rights when it designated him without providing Nabizada with the classified information underlying that decision. *See* ECF No. 32; ECF No. 32-1 at 1–2.

## II. Discussion

In Administrative Procedure Act ("APA") cases, summary judgment generally "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Zevallos v. Obama*, 10 F. Supp. 3d 111, 117 (D.D.C. 2014) (quoting *Kadi v. Geithner*, 42 F. Supp. 3d 1, 9 (D.D.C. 2012)), *aff'd*, 793 F.3d 106 (D.C. Cir. 2015). The court asks whether "the evidence in the administrative record permitted the agency to make the decision it did." *Olenga v. Gacki*, 507 F. Supp. 3d 260, 272 (D.D.C. 2020) (quoting *Hi-Tech Pharmacal Co. v. FDA*, 587 F. Supp. 2d 1, 18 (D.D.C. 2008)).

Nabizada's first count asserts OFAC unlawfully delayed in ruling on his reconsideration petition. ECF No. 16 ¶¶ 69–78. But, as Nabizada seems to acknowledge, this claim became moot when the government denied his petition. *See, e.g.*, *Zevallos*, 10 F. Supp. 3d at 123 (concluding an APA unreasonable delay claim "is moot because OFAC has issued its decision regarding [plaintiff's] designation"); *Karadzic v. Gacki*, No. 23-cv-1226, 2024 WL 4253132, at *4 (D.D.C. Sep. 20, 2024) (concluding the plaintiff's "claims are moot" because "OFAC has adjudicated her request for removal from the SDN list"); *see also* ECF No. 32-1 at 2 n.3 (Nabizada declining to oppose the government's argument that the unreasonable delay claim is moot). Because it lacks jurisdiction to adjudicate a moot claim, the court must dismiss count one without prejudice. *See* Fed. R. Civ. P. 12(h)(3) (requiring dismissal if "the court determines at any time that it lacks subject-matter jurisdiction"); *see also Zevallos*, 10 F. Supp. 3d at 123.

Nabizada's remaining claims assert that OFAC's initial designation and denial of reconsideration were arbitrary and capricious. *See* ECF No. 16 ¶¶ 79–87 (count two challenging

OFAC's "use of irrelevant, immaterial, or unduly repetitious evidence"); *id.* ¶¶ 88–91 (count three challenging the initial designation); *id.* ¶¶ 92–97 (count four challenging the reconsideration denial). The court disagrees and instead concludes the government is entitled to summary judgment.

The APA requires courts to hold unlawful and set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An action is "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Put simply, courts are tasked with verifying that the agency undertook "reasoned decisionmaking." *Id.* at 52. This is a limited review; the court cannot "substitute its judgment for that of the agency." *Id.* at 43. Instead, the court "presumes the validity of agency action," evaluates "whether the agency has considered the relevant factors and articulated a rational connection between the facts found and the choice made," and vacates the action "only if the agency's decision is not supported by substantial evidence, or the agency has made a clear error in judgment." *AT&T Corp. v. FCC*, 349 F.3d 692, 698 (D.C. Cir. 2003) (cleaned up) (quoting *AT&T Corp. v. FCC*, 220 F.3d 607, 616 (D.C. Cir. 2000)); *see Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007) (stating that, "if OFAC's actions were not arbitrary and capricious and were based on substantial evidence, we must affirm the district court's decision" granting summary judgment to the government). The D.C. Circuit has recognized the delicate approach courts should take when reviewing agency decisions in cases like this one, "at the intersection of national security, foreign policy, and

administrative law." *Islamic Am. Relief Agency*, 477 F.3d at 734. Even still, however, judicial review serves as a meaningful check against an agency giving "an explanation for its decision that runs counter to the evidence" or that "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *State Farm*, 643 U.S. at 43.

Applying these standards to the record, the court concludes OFAC's initial-designation and reconsideration-denial decisions were supported by reasoned decisionmaking. As the initial evidentiary memorandum says, OFAC designated Nabizada based on a determination that he "has materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of, the IRGC-QF." ECF 40-1 at 8–9. It is undisputed the IRGC-QF is an entity that had already been designated for economic sanctions under the executive order, added to the SDN List, and had its assets blocked by the government. *See id*. The letter denying Nabizada's reconsideration decision reiterates that OFAC's decision "was based upon evidence that he materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of, Iran's Islamic Revolutionary Guard Corps-Qods Force (IRGC-QF)." *Id.* at 49. It explains that, after "reviewing and carefully considering the evidence and other information available to OFAC," the government determined Nabizada had "not provided credible arguments or evidence establishing that an insufficient basis exists for his designation" and "continues to meet the criteria for designation." *Id*. The letter also says OFAC determined that Nabizada "helped raise funds for the IRGC-QF through the sale and transport of tens of thousands of tons of oil on behalf of senior IRGC-QF officials" and "has been involved in price negotiation, contract execution, and the subsequent sale and shipment of Iranian oil, as well as the repatriation of millions of dollars to the IRGC." *Id.* Finally, the evidentiary memorandum accompanying the denial letter explained that these "oil-smuggling operations" were the reason

for its decision and that the other facts mentioned in the public press release about Nabizada's designation—namely, the activities of a company Nabizada formerly managed and any connection between Nabizada and the Kabul Bank—"did not provide the basis for" the designation. ECF No. 40-1 at 60–61; ECF No. 40-2 at 2 (explaining Nabizada's "claim to have no relationship with or involvement in Kabul Bank or any schemes to defraud it is irrelevant to his basis for designation"). The government has also lodged the full classified agency record for ex parte and in camera review, and that record confirms the court's conclusion that OFAC's decisions pass muster under the APA. *See* 50 U.S.C. § 1702(c) (explicitly providing for such review of classified information underlying decisions made pursuant to the powers granted by IEEPA). On this record, the court cannot say that OFAC's decisions fall short of what is required by the APA.[2]

Nabizada makes two arguments to the contrary, both of which are unpersuasive. He first argues that the government relied on false premises, disputing various factual statements in the public press release that accompanied the government's initial designation. For example, the press release mentions Nabizada's former management of a company tied to the IRGC-QF, but he says he relinquished control before the company began supporting the IRGC-QF. *See* ECF No. 40-1 at 3 (press release); ECF No. 32-1 at 15. Similarly, Nabizada disputes the press release's statements that he was the Afghan "chargé d'affaires in Moscow" and that he was involved in a corruption scheme involving Kabul Bank. ECF No. 32-1 at 15–16; *see* ECF No. 40-1 at 3–4. But the reconsideration evidentiary memorandum explains that none of those facts in the press release provided the basis for OFAC's designation or reconsideration decisions. *See* ECF No. 40-1 at 60–

---

[2] The APA counts in Nabizada's complaint also assert that OFAC's decisions were an abuse of discretion and/or contrary to law in violation of the APA, but he offers no argument on how those theories allow his APA claims to survive summary judgment. The court thus understands them to be redundant of Nabizada's arbitrary-and-capricious claims and concludes the government is entitled to summary judgment for the same reasons.

61; ECF No. 40-2 at 2. Instead, the memorandum explains the decisions were based on Nabizada's "involvement in arranging the sale of Iranian oil for the IRGC-QF and helping to arrange the repatriation of proceeds." ECF No. 40-1 at 60. That is consistent with the public press release, which stated that Nabizada assisted an IRGC-QF associate to arrange "the sale and transport of tens of thousands of tons of oil on behalf of senior IRGC-QF officials." ECF No. 40-2 at 6. And the classified administrative record contains substantial evidence to support that determination, independent of the information Nabizada contests. *See Zevallos*, 10 F. Supp. 3d at 123 n.9 (upholding an OFAC decision even when "a fraction of the newspaper articles" relied on may have been "biased" because "they were not the only evidence relied upon by OFAC" and "the evidence OFAC relied upon as a whole 'adequately supports its ultimate decision'" (quoting *Fla. Gas Transmission Co. v. FERC*, 604 F.3d 636, 645 (D.C. Cir. 2010))); *Kadi*, 42 F. Supp. 3d at 16–17 (observing OFAC did "not appear to rely significantly on" an article the plaintiff disputed the accuracy of and emphasizing that the plaintiff "provided OFAC with his version of the claims made in the" article, so "OFAC therefore had the benefit of [the plaintiff's] account which it then reasonably discredited based on the evidence in the record as a whole"); *see also Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C. Cir. 1995) (noting that an agency's decision need not "be a model of analytic precision to survive a challenge" and that reviewing courts will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned" (quoting *Bowman Transp., Inc. v. Ark.-Best Motor Freight Sys.*, 419 U.S. 281, 286 (1974))). Finally, to the extent Nabizada challenges OFAC's stated basis for its decision—the "oil-smuggling operations"—as opposed to the additional facts mentioned in the press release, the denial letter and accompanying evidentiary memorandum rejected Nabizada's conflicting arguments and evidence as not credible—a decision that this court, again, cannot say flunks APA review. ECF

No. 40-1 at 49, 60–61; ECF No. 40-2 at 3; *see Zevallos*, 10 F. Supp. 3d at 123 n.9 (observing the plaintiff raised the same evidentiary arguments before OFAC, which OFAC rejected, and stating that it "is not the province of this Court to reweigh the evidence and reconsider [plaintiff's] arguments").

Nabizada, second, argues he has been denied due process because OFAC designated him using classified information that has not been made available to him or his attorneys. *See* ECF No. 32-1 at 12, 19–23. That argument does not provide a basis for granting Nabizada summary judgment for several reasons. As a threshold matter, Nabizada's complaint does not assert a Fifth Amendment due process claim, and he "is not permitted to raise new claims at the summary judgment stage." *See Taylor v. Mills*, 892 F. Supp. 2d 124, 137–38 (D.D.C. 2012) (collecting cases). And, further, even assuming Nabizada had asserted a due process claim and is entitled to Fifth Amendment protections, the court concludes the process the government provided was not constitutionally deficient. *See Olenga*, 507 F. Supp. 3d at 272–73 (collecting cases in which courts have "often declined to decide whether foreign plaintiffs can assert rights under the due process clause where, even assuming they could, the agency had provided the requisite process").[3]

The "fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 208 (D.C. Cir. 2001) (cleaned up) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

---

[3] On the same day Nabizada filed his amended complaint, he filed a motion to compel disclosure of redacted parts of the administrative record through unclassified summaries or an opportunity for counsel with the required clearance to review redacted information on his behalf, arguing that the failure to provide such information violated his Fifth Amendment due process rights. *See* ECF No. 18-1 at 6–7. He also argued that ex parte, in camera review of the classified information by the court would be insufficient in this case. *Id.* at 14. The court denied Nabizada's motion to compel, explaining that Nabizada had not shown he was entitled to further unclassified summaries and that "summary judgment is the proper time to address the kind of due process questions Nabizada raises," as the court now does. ECF No. 26 at 2–4.

That guarantee "requires only that process which is due under the circumstances of the case." *People's Mojahedin Org. of Iran v. Dep't of State*, 327 F.3d 1238, 1242 (D.C. Cir. 2003). "To determine whether OFAC's designation of a plaintiff provides constitutionally adequate notice—enabling him meaningfully to avail himself of his opportunity to be heard—courts weigh three factors under the familiar *Mathews v. Eldridge* balancing test: (1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'; (3) and 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Fares v. Smith*, 901 F.3d 315, 323 (D.C. Cir. 2018) (quoting *Mathews*, 424 U.S at 335).

The D.C. Circuit has recognized, under the first factor, that "the effect of an OFAC designation on the designee's private interests is 'dire'" and, under the second factor, that "[w]hen the government freezes assets based on redacted evidence—thereby limiting the designee's opportunity to probe or cross-examine on that evidence—the risk of erroneous deprivation is especially high." *Id.* at 323–24 (quoting *Nat'l Council of Resistance*, 251 F.3d at 196). But the circuit has also rejected the argument that "due process prevents" designating a plaintiff "based upon classified information to which [they have] not had access." *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 163–64 (D.C. Cir. 2003). In other words, an OFAC designation decision does not violate due process "simply because the agency relies upon classified information that the government refused to disclose." *Fares*, 901 F.3d at 324 (cleaned up) (quoting *People's Mojahedin Org.*, 327 F.3d at 1241–42). Rather, because the government's interest is strong (the third factor) and "[f]orcing the executive branch to disclose information that it has validly classified would 'compel a breach in the security which that branch is charged to protect,'"

due process requires "the disclosure of *only* the unclassified portions of the administrative record." *Id.* (quoting *Nat'l Council of Resistance*, 251 F.3d 208–09; *People's Mojahedin Org.*, 327 F.3d at 1242); *see id.* (emphasizing the need "to ensure a designee's notice and process via alternative means, while respecting compelling national security interests").

Here, the government disclosed to Nabizada the unclassified portions of the administrative record. The unclassified information included the reason for designating him—that he provided support to the IRGC-QF, an organization that was already designated. *See* ECF No. 40-1 at 2, 8–9. And when Nabizada filed a petition for reconsideration, the record suggests OFAC gave his petition and accompanying evidence due consideration (including by sending Nabizada a questionnaire to get additional information) and specifically rejected his arguments and evidence based on the totality of the evidence before it. *See* ECF No. 40-1 at 49–62; ECF No. 40-2 at 1–4. The government's denial letter explained that Nabizada "continues to meet the criteria for designation" because he "helped raise funds for the IRGC-QF through the sale and transport of tens of thousands of tons of oil on behalf of senior IRGC-QF officials" and "has been involved in price negotiation, contract execution, and the subsequent sale and shipment of Iranian oil, as well as the repatriation of millions of dollars to the IRGC." ECF No. 40-1 at 49. And the reconsideration evidentiary memorandum provided further unclassified information about the basis for Nabizada's designation as well as responses to Nabizada's arguments. *See id.* at 60–62; ECF No. 40-2 at 1–4. The court concludes the unredacted information the government disclosed to Nabizada was sufficient to satisfy the requirements of due process and that the remaining redactions fall "within the privilege and the prerogative of the executive." *Holy Land Found.*, 333 F.3d at 164; *see People's Mojahedin Org.*, 327 F.3d at 1242 (rejecting the argument that the use of classified information disclosed only to the court ex parte and in camera violates due process).

Nabizada acknowledges he is not entitled to the classified record and that IEEPA authorizes lodging it with the court for ex parte and in camera review. *See* ECF No. 32-1 at 1 n.2, 23 n.7 (citing 50 U.S.C. § 1702(c)). But he argues an "*ex parte*, *in camera* judicial review of the classified information would be insufficient . . . in this case based on the government's track record." *Id.* at 20. Specifically, Nabizada argues the factual errors he alleges the government made in the public press release requires it to provide further "unclassified summaries or complete disclosure to properly cleared defense counsel subject to an appropriate order" to satisfy due process. *Id.* To be sure, the D.C. Circuit has recognized that "in certain limited circumstances, in lieu of classified evidence the government may provide designees with sufficiently specific 'unclassified summaries ensuring that neither the government's sources nor national security were compromised, that provide plaintiffs with the "who," "what," "when" and "where" of the allegations.'" *Fares*, 901 F.3d at 324 (alterations omitted) (quoting *Kiareldeen v. Ashcroft*, 273 F.3d 542, 548 (3d Cir. 2001)). But the court is not persuaded the government was required to provide more than it did here. To start, the reconsideration evidentiary memorandum does provide additional, unclassified information about OFAC's decisionmaking. *See* ECF No. 40-1 at 60–62; ECF No. 40-2 at 1–4. And, as explained above, the facts Nabizada continues to point to from the press release did not form the basis for OFAC's decisions to initially designate Nabizada and to deny his reconsideration petition. *See* ECF No. 40-1 at 60; ECF No. 40-2 at 2; *see also* ECF No. 21 at 12 n.3. In light of the official decision letters and evidentiary memoranda in the record, the court declines to draw a broader inference about the government's "track record" based on the public press release. *See* ECF No. 21 at 12 n.3 (explaining "[t]he press release addressed the designation of an oil-smuggling network involving at least ten individuals and nine entities"). The government has also represented that it cannot provide any more information "without causing exceptionally

grave or serious damage to national security," and the court's review of the classified record supports that representation. ECF No. 21 at 14 (quotation marks omitted).

In sum, the government gave Nabizada sufficient notice of OFAC's reasons for designating him—through its initial decision, the process that followed, and its reconsideration denial—and lodged the full classified record with the court for ex parte and in camera review as contemplated by statute. The court therefore concludes the government has complied with the requirements of due process under the relevant precedents and that Nabizada's contrary arguments do not provide a basis for granting him summary judgment. *See Holy Land Found.*, 333 F.3d at 164; *Olenga*, 507 F. Supp. 3d. at 276 ("The public record materials provided [plaintiff] with sufficient notice of OFAC's reasons for re-designating him to allow for a meaningful opportunity to be heard. Under *Holy Land*, that is all—and, indeed, more than—IEEPA and the Constitution require.").

## III. Conclusion

For these reasons, count one is dismissed without prejudice, the government's motion for summary judgment is otherwise granted, and Nabizada's cross motion for summary judgment is denied. A separate order accompanies this memorandum opinion.

AMIR H. ALI
United States District Judge

Date: August 26, 2026